UNTIED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| ELI DURAND-MCDONNELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| KEVIN EDGECOMB, in his individual | ) | Civil No. _____ |
| capacity | ) | |
| | ) | |
| & | ) | |
| | ) | |
| NATHAN FORMBY, in his individual | ) | |
| capacity. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

## COMPLAINT AND DEMAND FOR JURY TRIAL

NOW COMES Plaintiff, Eli Durand-McDonnell, by and through undersigned counsel, and hereby complains against Defendants Bar Harbor and Mount Desert Police Department Lieutenant Kevin Edgecomb and Patrolman Nathan Formby, as follows:

## INTRODUCTION

1. This is a civil rights case challenging Bar Harbor and Mount Desert Police Lieutenant Kevin Edgecomb (hereinafter "Lt. Edgecomb") and Patrolman Nathan Formby's (hereinafter "Officer Formby") illegal arrest of Eli Durand-McDonnell (hereinafter "Durand-McDonnell") in direct retaliation against Durand-McDonnell for the peaceful exercise of his First Amendment rights in protest of the political agenda of Leonard Leo (hereinafter "Leo"). Lt. Edgecomb and Officer Formby made this illegal and retaliatory arrest to silence Durand-McDonnell's free speech and at the direct behest of Leo, a

powerful and wealthy conservative political activist who has used millions of dollars as political speech to influence American politics and courts. Moments before Durand-McDonnell's illegal arrest, Leo told Lt. Edgecomb and Officer Formby that "You know, this is no longer -- just so we're clear here, this is no longer a political protest, all right? When they have 'fuck Leo' signs and stuff like that, that's not a political protest anymore, okay?" Leo also told the officers that "And so I really feel like this is a guy who's got to be in jail someday, and sooner rather than later." Lt. Edgecomb and Officer Formby agreed with Leo and arrested Durand-McDonnell and brought him to jail as he was literally holding a sign denouncing Leo's political activities despite clear state and federal law prohibiting them from doing so. The officers' collective actions retaliated against Durand-McDonnell for exercising one of his most important constitutional rights and sought to chill his political speech.

## PARTIES

1. Plaintiff Eli Durand-McDonell is a resident of Bar Harbor, Maine.

2. Defendant Lt. Kevin Edgecomb is a police department officer for the Bar Harbor and Mount Desert Police Department.

3. Defendant Officer Nathan Formby is a police department officer for the Bar Harbor and Mount Desert Police Department.

4. Lt. Edgecomb and Officer Formby, sued in their individual capacities, were police officers for the Bar Habor and Mount Desert Police Department and acted under color of state law at all times relevant to this Complaint.

## JURISDICTION

5.  This action seeks to vindicate rights guaranteed by the First, Fourth, and Fourteenth Amendments of the United States Constitution, and it is brought pursuant to 42 U.S.C. § 1983.

6.  This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this action arises under federal law.  Jurisdiction is also authorized pursuant to 28 U.S.C. § 1343(a)(3).

7.  Pursuant to 28 U.S.C. § 1367(a), this Court possesses supplemental jurisdiction over state law claims under the Maine Civil Rights Act, 5 M.R.S. §§ 4681-85, and the Maine Tort Claims Act, 14 M.R.S. §§ 8101-8118.

8.  Venue in this Court is proper under 28 U.S.C. § 1391(b) because the events giving rise to this action occurred within this judicial district and because the Defendants are subject to personal jurisdiction in this District.

## STATEMENT OF FACTS

9.  On June 24, 2022, the United State Supreme issued its decision in *Dobbs v. Jackson Women's Health Organization*, which effectively overturned the long-standing decision in *Roe v. Wade* that provided federal protections for women's reproductive rights.

10. Public opinion over the overturning of *Roe v. Wade* was split with strong sentiments for and against its overturning.

11. Many Americans were angered by the *Dobbs* decision and what they viewed as the radical actions of a new conservative majority on the US Supreme Court.

12. Media coverage before and after the *Dobbs* decision revealed that Leo played a significant role in the nomination and appointment of the Supreme Court's most recent conservative justices, including Neil Gorsuch, Brett Kavanaugh, and Amy Coney Barrett.

13. Leo owns a summer home in Northeast Harbor, Maine.

14. Leo and his home became the focus of political protests against him for his efforts supporting the nominations of conservative Supreme Court Justices following issuance of the *Dobbs* decision on June 24, 2022.

15. Durand-McDonnell, his family, friends, and others took part in these protests outside Leo's home in Northeast Harbor.

16. Durand-McDonnell was participating in such a peaceful political protest on July 31, 2022.

17. At approximately 5:53PM the head of Leo's private security detail contacted the Bar Harbor and Mount Desert Police Department to complain about the protest.

18. In particular, the security officer complained about Durand-McDonnell and reportedly stated that "There is a group of about 25-30 protestors exercising their First Amendment rights, but this kid has gone above and beyond harassing them, cursing at them. Not the first time and now he is standing on the edge of the property yelling obscenities."

19. Lt. Edgecomb and Officer Formby responded to the call.

20. Lt. Edgecomb responded with his emergency lights and siren.

21. Lt. Edgecomb arrived first and was brought into the study of Leo's home by his security detail.

22. Lt. Edgecomb wore a microphone that captured the audio of his interactions with Leo inside Leo's home and Durand-McDonnell and protestors outside by the protest.

23. Leo told Lt. Edgecomb that "I think it's time for us to press some charges."

4

24. Leo pointed out Durand-McDonnell to Lt. Edgecomb and admitted Durand-McDonnell was not on his property where he was protesting.

25. Durand-McDonnell was holding a sign that read "Leonard Leo. May be a really nice guy. But: He is also directly responsible for the overturning of Roe v. Wade and the erosion of your reproductive rights. Google his name. He is one of the most dangerous men in the United States."

26. Durand-McDonnell was dressed casually and seen smiling throughout the portion of the peaceful protest captured on Lt. Edgecomb's cruiser camera.

27. Leo told Lt. Edgecomb that earlier that day around 4:30PM Durand-McDonnell had yelled at him and his family from a moving vehicle telling him that "you're a fucking asshole" and "you're going to hell."

28. Leo also told Lt. Edgecomb that Durand-McDonnell yelled to his wife and daughter that "you're all going with him."

29. All of these allegations occurred outside the presence of Lt. Edgecomb and Officer Formby.

30. 17-A M.R.S. § 15 prohibits Maine law enforcement officers, including Lt. Edgecomb and Officer Formby, from arresting citizens of Maine for enumerated misdemeanor offenses unless those enumerated misdemeanor offenses occur in the presence of the officer.

31. 17-A M.R.S. § 15 was in effect at all times relevant to this Complaint.

32. Leo complained about other people who yelled obscenities at him at another time and offered to provide information about those individuals to Lt. Edgecomb.

33. Upon information and belief, those other individuals were never arrested by Lt. Edgecomb.

34. Later in the conversation, Leo told Officer Edgecomb about Durand-McDonnell that "And so I really feel like this is a guy who's got to be in jail someday, and sooner rather than later."

35. Officer Edgecomb responded by asking if Durand-McDonnell was "still out there" and arrested him mere minutes later.

36. Durand-McDonnell was arrested while holding a sign and peacefully protesting Leo's political activities.

37. Durand-McDonnell disagrees with Leo's political activities and his strong disagreements with Leo's political activities were the sole reason he protested outside Leo's home.

38. Prior to arresting Durand-McDonnell, Lt. Edgecomb told Leo that "So what we're going to probably do is arrest him, take him to jail so that he has bail conditions not to be in or near 46 South Shore Road. If I could make it my way, he wouldn't be allowed in Northeast Harbor, but bail commissioners don't do that often—all the time."

39. Lt. Edgecomb then went on to say that there was no reason for Durand-McDonnell to be at 46 South Shore Road, which is Leo's home and the site of the protests.

40. Lt. Edgecomb further went on to criticize statements made by the protestors stating that "even some of the stuff I heard them say is, you know, it's like really, guys? You know, come on. You know, I was here the night that Susan Collins was here. I was across the street. I hung out with those guys over there just so that I could figure out what -- you know, what the deal was."

41. Upon information and belief, Lt. Edgecomb is referring to protests outside Leo's home in August 2019 during a fundraiser for US Senator Susan Collins in light of her vote to confirm the nomination of Supreme Court Justice Kavanaugh.

6

42. Lt. Edgecomb and Officer Formby confronted Durand-McDonnell and identified him before handcuffing him, forcing him into a police cruiser, and taking him to Hancock County Jail to process him for arrest, including imposition of bail conditions that prohibited him from being at or near the vicinity of Leo's summer home in Northeast Harbor.

43. Officer Formby searched Durand-McDonnell's person without his consent after the unlawful arrest.

44. Multiple protestors chanted "fucking asshole" at Lt. Edgecomb as he left after Durand-McDonnell's arrest.

45. Lt. Edgecomb did not arrest any other protestors for disorderly conduct.

46. The Hancock County District Attorney's Office charged Durand-McDonnell with Disorderly Conduct by Complaint.

47. The Hancock County District Attorney's Office later dismissed that Complaint on May 11, 2023.

**FIRST CAUSE OF ACTION**
**Violation of 42 U.S.C. § 1983—Retaliatory Arrest in Violation of the First Amendment of the United States Constitution**
**(Lt. Edgecomb and Officer Formby in individual capacities)**

48. Durand-McDonnell reasserts and realleges the allegations in paragraphs 1-47.

49. At all times relevant to this Complaint, Durand-McDonnell's actions and statements about Leo were made as political protest and pursuant to his First Amendment rights to free speech and assembly.

50. The political nature of Durand-McDonnell's speech and actions was and/or should have been obvious to Lt. Edgecomb and Officer Formby from the context of repeated earlier

protests at Leo's home, Leo's own statements prior to the arrest, and the national attention on the *Dobbs* decision.

51. Lt. Edgecomb and Officer Formby arrested Durand-McDonnell in retaliation for his exercise of First Amendment rights.

52. Lt. Edgecomb and Officer Formby's retaliatory arrest caused Durand-McDonnell's injuries by subjecting him to illegal physical restraint, illegal search, interfering with his right to speak and assemble, using bail conditions to further chill and interfere with his right to assemble and speak, and subjecting him to the embarrassment and fear of an illegal prosecution for Disorderly Conduct.

53. Lt. Edgecomb and Officer Formby arrested Durand-McDonnell without probable cause given the facts and circumstances of the allegations against him.

54. Lt. Edgecomb and Officer Formby further arrested Durand-McDonnell for Disorderly Conduct when otherwise similarly situated individuals not engaged in the same type of protected speech and assembly have not been arrested and/or are not allowed to be arrested under existing Maine law.

55. Durand-McDonnell suffered damages as a result of Lt. Edgecomb and Officer Formby's illegal arrest.

56. Durand-McDonnell's First Amendment rights to free speech and assembly and to be free from retaliatory arrests for exercising the same were clearly established at the time of his illegal arrest.

57. Lt. Edgecomb and Officer Formby's arrest of Durand-McDonnell under the circumstances was made with actual malice, recklessness and/or callous indifference to his constitutionally protected rights.

**SECOND CAUSE OF ACTION**
**Violation of 42 U.S.C. § 1983—Unlawful Arrest in Violation of the Fourteenth**
**Amendment of the United States Constitution**
**(Lt. Edgecomb and Officer Formby in individual capacities)**

58. Durand-McDonnell reasserts and realleges the allegations in paragraphs 1-57.

59. Durand-McDonnell has a Fourth Amendment right to be free from unreasonable searches and seizures, including arrest except when a law enforcement officer is aware of facts and circumstances, based on reasonably trustworthy information, that would warrant an ordinarily prudent and cautious law enforcement officer to believe Durand-McDonnell did commit or was committing a crime.

60. Lt. Edgecomb and Officer Formby, while acting under color of state law, arrested Durand-McDonnell without any facts or circumstances that Durand-McDonnell committed or was committing a crime.

61. The specific facts and circumstances of allegations against Durand-McDonnell were plainly protected speech based on the information known and available to Lt. Edgecomb and Officer Formby prior to their decision to arrest Durand-McDonnell.

62. Durand-McDonnell's Fourth Amendment right to be free from arrest without probable cause was clearly established at the time of his arrest.

63. Lt. Edgecomb and Officer Formby's arrest of Durand-McDonnell under the circumstances was made with actual malice, recklessness and/or callous indifference to his constitutionally protected rights.

### THIRD CAUSE OF ACTION
**False Arrest**
**(Lt. Edgecomb and Officer Formby in individual capacities)**

64. Durand-McDonnell reasserts and realleges the allegations in paragraphs 1-63.

65. Lt. Edgecomb and Officer Formby communicated with each other about a plan to arrest Durand-McDonnell for alleged Disorderly Conduct that occurred outside of their presence.

66. Lt. Edgecomb and Officer Formby intended to arrest and confine Durand-McDonnell.

67. Durand-McDonnell was conscious and aware of his confinement, which included being forcibly removed from the peaceful protest, placed into physical restraints, searched and deprived of personal property, transported by police cruiser to the Hancock County Jail over 20 miles away, held for processing at the jail, and released on bail conditions that continued to restrict his liberty.

68. Durand-McDonnell did not consent to this illegal confinement.

69. Lt. Edgecomb and Officer Formby held no privilege allowing them to confine Durand-McDonnell under these circumstances.

70. Lt. Edgecomb and Officer Formby's illegal arrest and imprisonment caused Durand-McDonnell damages, including but not limited to emotional distress and dignitary damages.

71. Lt. Edgecomb and Officer Formby's illegal arrest of Durand-McDonnell was made with actual malice and/or the conduct of the arrest was so outrageous that malice can be implied.

### FOURTH CAUSE OF ACTION
**Violation of Maine Civil Rights Act (5 M.R.S. § 4682)**
**(Lt. Edgecomb and Officer Formby in individual capacities)**

72. Durand-McDonnell reasserts and realleges the allegations in paragraphs 1-71.

10

73. Lt. Edgecomb and Officer Formby intentionally interfered with Durand-McDonnell's exercise of his rights to free speech and assembly by physical force when they arrested him in the act of his peaceful political protest.

74. Durand-McDonnell's rights to free speech and assembly are secured by the US and Maine Constitutions respectively under the First Amendment of the US Constitution and Article I, Section Four of the Maine Constitution.

75. Durand-McDonnell's rights to be free from unreasonable searches and seizures are secured by the US and Maine Constitutions respectively under the Fourth Amendment of the US Constitution and Article I, Section Five of the Maine Constitution.

76. Lt. Edgecomb and Officer Formby's physical arrest and imprisonment of Durand-McDonnell interfered with his US and Maine constitutional rights to free speech and assembly and to be free from unreasonable seizure.

77. Lt. Edgecomb and Officer Formby's interference caused Durand-McDonnell damages, including but not limited to emotional distress.

78. Lt. Edgecomb and Officer Formby's illegal arrest of Durand-McDonnell and interference with his constitutional rights were made with actual malice and/or the conduct was so outrageous that malice can be implied.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Eli Durand-McDonnell, respectfully prays that this Honorable Court:

79. Enter judgment is his favor awarding compensatory and punitive damages, plus pre-judgment and post-judgment interest;

11

80. Award him reimbursement costs of suit, including reasonable attorney fees and other litigation costs incurred in bringing this action pursuant to 42 U.S.C. § 1983 and 5 M.R.S. § 4682;

81. Grant such further relief as the Court may deem just and proper.

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL CLAIMS IN HIS COMPLAINT SO TRIABLE AS OF RIGHT**.

Dated: July 20, 2023

*/s/ Matthew D. Morgan*
MATTHEW D. MORGAN, ESQ.
Bar Number: 5044
Attorney for Plaintiff
McKee Law, LLC, P.A.
133 State Street
Augusta, Maine 04330
 (207) 620-8294
*E-mail*: *mmorgan@mckeelawmaine.com*